**Ardia V. McCREE, Appellant,**

v.

**Vernon HOUSEWRIGHT, Director, Arkansas Department of Correction, Appellee.**

**No. 82–1124.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 29, 1982.

Decided Oct. 8, 1982.

William R. Wilson, Jr., Little Rock, Ark., for appellant.

Steve Clark, Atty. Gen. by Dennis R. Molock, Deputy Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges.

STEPHENSON, Senior Circuit Judge.

The question presented in this habeas corpus action is whether petitioner's video taped statement concerning a murder was improperly obtained by the police after petitioner had invoked his right to counsel.[1] Petitioner alleges that his rights under the Fifth and Fourteenth Amendments were violated in the procedure leading up to the statement. The district court[2] concluded that because petitioner initiated communication with the police and because he knowingly and intelligently waived his right to counsel, this statement was properly admitted into evidence. We affirm.

Petitioner was convicted of felony murder on May 12, 1978, in a state court jury trial and was sentenced to life imprisonment without parole. On direct appeal, the Arkansas Supreme Court affirmed. *McCree v. State*, 266 Ark. 465, 585 S.W.2d 938 (1979). Petitioner's request to proceed under Rule 37 of the Arkansas Rules of Criminal Procedure was denied, as was his request for rehearing to proceed under that rule. Petitioner brought this action pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Arkansas. After conducting an evidentiary hearing, the United States Magistrate issued proposed findings which the district court adopted in its denial of the writ of habeas corpus. Petitioner appeals.

I. BACKGROUND

Petitioner's conviction arose out of an incident which occurred at approximately 8:00 a.m., February 14, 1978, in which Evelyn Boughton, owner and operator of La Tienda Gift Shop and Service Station in Camden, Arkansas, was shot and killed in connection with a robbery. At approximately 2:00 that afternoon, petitioner was arrested in Hot Springs, Arkansas, and advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At approximately 11:00 that evening petitioner was returned to

---

1. The thrust of the statement was exculpatory but it contained incriminating evidence.

2. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas, presiding.

Camden by Lieutenant Paladino of the Camden Police Department who advised petitioner of his rights both prior to leaving Hot Springs and after arriving in Camden. Upon arriving in Camden, petitioner was locked in his cell for the night without questioning at that time.

The sequence of events the following day, February 15, 1978, is unclear. The testimony of the police and of petitioner is in conflict. The district court, after conducting an evidentiary hearing, determined that on the morning of the 15th, petitioner was taken from his cell for processing, was again read his rights, and was briefly questioned until petitioner indicated that he might want an attorney, at which point the conversation ceased. Later that morning, he was visited by his wife, his brother, and James Pratt, an attorney from Camden. Petitioner testified that his brother thought that he might need a lawyer. According to the district court, at some later time, petitioner knocked on his cell door and stated that he had something to say but the police did not respond to this request at that time.[3]

At approximately 5:30 p. m., Lieutenant Paladino,[4] who had just returned to the police station, proceeded to petitioner's cell, apparently in response to McCree's earlier request to say something. Paladino asked petitioner whether he wanted to see him. Lieutenant Paladino testified that petitioner responded that he had something he wanted to tell the police. Immediately thereafter, Lieutenant Paladino contacted by telephone Robert Laney, a deputy prosecuting attorney, who then came to the police station. After Mr. Laney arrived, Lieutenant Paladino brought petitioner from his cell to the detectives' office to make a statement. The remaining facts are contained on the video tape which was played at trial:

MR. LANEY: Ardia, this is a videotape that's used to videotape. (Unintelligible). Ardia, I think you know this is about the investigation of a shooting down there and before we go any further I'd like for them to go over again—I know you've been read what your rights are. If you would, I would like for them to read them again. ·Routine standard procedure. Okay?

DEFENDANT: All right.

LIEUTENANT PALADINO: Six ten p. m. on the 15th. Before we ask you any questions you have to understand your rights. You have the right to remain silent. Do you understand that?

DEFENDANT: Yes, I do.

LIEUTENANT PALADINO: Anything you say can and will be used against you in a court of law. Do you understand that?

DEFENDANT: Yes.

LIEUTENANT PALADINO: You have the right to talk to a lawyer and have him present with you while you're being questioned. Do you understand that?

DEFENDANT: Yes, I do.

---

**3.** Petitioner's testimony indicated that he knocked on his cell door to make a statement before he was visited by his brother, wife and attorney and before he requested counsel. Appellee's brief suggests a third sequence: petitioner requested counsel during fingerprinting, then knocked on his cell door to say something and last, met with his family and attorney. Even if we were to assume, as appellant argues, that petitioner requested counsel at some point after he knocked on his cell door to make a statement, this would not affect the result in this case. Regardless of the exact sequence of events that morning, once petitioner requests counsel, the test for the admissibility of the later statement is the same: whether petitioner both initiates the subsequent communication and validly waives his right to counsel.

**4.** Petitioner testified before the district court that it was Detective Walker, not Lt. Paladino, who came to his jail cell. Additionally, petitioner testified that the police *told* him that they wanted to have an interview with him rather than *asking* whether petitioner wished to speak with them. If this were the case, it would make a crucial difference under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because the police would then have initiated the incriminating communication. However, this is contrary to Lt. Paladino's testimony which was accepted by the district court. We cannot say that the district court's findings of fact, crediting Lt. Paladino's testimony, are not supported by the record.

LIEUTENANT PALADINO: If you can't afford one, one will be appointed to represent you before any questioning if you wish. Do you understand that?

DEFENDANT: Yes, I do.

LIEUTENANT PALADINO: If you decide at any time to exercise these rights and not answer any questions, or make any statements, do you understand that?

DEFENDANT: Yes, I do.

LIEUTENANT PALADINO: Ardia, earlier this morning we talked with you. At that time you said that you requested an attorney. Is that right?

DEFENDANT: Well, yes because my brother did say he was thinking of hiring one himself. I don't know. I don't know about an attorney until I kind of find out what kind of bond is set or whatever it is before I really you know because I don't know what it is, really and truly, I haven't told you the full and true statement about it, and I'm going to now, and I realize that I'm in trouble, and it's just nothing I can do about it. I should have done it earlier. Might have been—saved the whole thing.

LIEUTENANT PALADINO: Do you still want an attorney at this time before you talk to us?

DEFENDANT: I want to tell you just exactly what happened.

LIEUTENANT PALADINO: You want to talk at this time?

DEFENDANT: Right. This here, I know—I know it's going to be hard to believe, that's one reason I didn't—I just stayed on the statement it was because I been had, I been took.

LIEUTENANT PALADINO: You say you don't desire legal counsel at this time?

DEFENDANT: Not at this time.

MR. LANEY: We're going to listen to you, Ardia. Tell us what...

DEFENDANT: This is exactly what happened. . . .

The findings of fact are vitally important to the outcome in this case. Our review of the fact findings made by the district court after an evidentiary hearing is controlled by the clearly erroneous rule. Rule 52 of the Federal Rules of Civil Procedure states: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." There is a conflict in testimony between petitioner and the police concerning the essential facts of this case. Both versions are credible. The district court, however, heard the evidence and was able to observe the demeanor of the witnesses. We cannot say that its findings are clearly erroneous.

## II. ANALYSIS

In *Miranda v. Arizona, supra,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that the Fifth Amendment guarantees an accused the right to have counsel present during custodial interrogation.[5] If an accused requests counsel, "the interrogation must cease until an attorney is present." *Id.* at 474, 86 S.Ct. at 1628. The right to counsel in such a situation is necessary, the Court concluded, because in-custody police interrogation of an accused "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467, 86 S.Ct. at 1624.

The Court recently reaffirmed the Fifth Amendment right to counsel during custodial interrogation in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* petitioner was informed of his *Miranda* rights and subsequently was interrogated by the police. Petitioner initially responded to questioning, but then told police that he wanted an attorney "before making a deal." *Id.* at 479, 101 S.Ct. at 1881. At that point, police

---

5. The Sixth Amendment right to counsel is not at issue in this case because it does not attach until adversarial judicial proceedings have been initiated. *Kirby v. Illinois,* 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972).

ceased questioning. The next morning, two detectives came to the jail to see the defendant. Edwards stated that he did not want to talk to anyone. The guard told Edwards that "he had" to talk and then took him to meet with the detectives. The officers identified themselves, stated that they wanted to talk to Edwards, and read defendant his *Miranda* rights. Thereafter, Edwards made a statement implicating himself in the crime. The Supreme Court held that the statement could not be admitted into evidence:

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S.Ct. at 1884. Appellant asserts that the procedure leading up to the video taped statement is directly proscribed by *Edwards*.

Three issues are presented in this appeal: (1) whether petitioner invoked his right to counsel; (2) who initiated the subsequent communication between petitioner and the police; and (3) whether petitioner knowingly and intelligently waived his right to counsel.

### A. *Invocation of Right to Counsel*

The district court found that petitioner's request for counsel was not as clear and unequivocal as he had argued, but nevertheless assumed that such a request was made. The facts concerning petitioner's re-

---

**6.** Most courts that have considered the issue of an equivocal or ambiguous request for counsel have concluded that the questioning official may continue to ask questions but only to clarify the suspect's wishes concerning his desire to invoke his *Miranda* rights. *See Nash v. Estelle,*

quest for counsel are cloudy. Petitioner testified that his brother "told me he thought I needed a lawyer, an attorney, my brother did, and I didn't really think I needed one, really and truly * * *." Lieutenant Paladino testified that "something came up where there was a possibility he was going to want an attorney and that's where the conversation ceased."

In *Miranda,* the Court stated that if the accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda v. Arizona, supra,* 384 U.S. at 444–45, 86 S.Ct. at 1612. The *Miranda* Court specifically contemplated the possibility that an accused might be indecisive about whether to have an attorney present:

> If [an accused] is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel. Situations of this kind must necessarily be left to the judgment of the interviewing Agent.

*Id.* at 485, 86 S.Ct. at 1633.[6] In this case, the judgment of the interviewing agent was that petitioner had invoked the right to counsel and the police treated the situation accordingly. Although it is a close question whether petitioner ever asserted his right to counsel, given that courts must "indulge in every reasonable presumption against waiver," *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), we agree with the district court's conclusion that petitioner invoked his right to counsel.

### B. *Initiation of Subsequent Communication*

Once the right to counsel has been invoked, the authorities may not further interrogate an accused "unless the accused himself initiates further communication, exchanges or conversations with the police."

---

597 F.2d 513, 517 (5th Cir. 1979); *United States v. Riggs,* 537 F.2d 1219, 1222 (4th Cir. 1976). We need not face that issue here, since the police ceased questioning after the somewhat ambiguous request for counsel.

*Edwards v. Arizona, supra,* 451 U.S. at 485, 101 S.Ct. at 1885. *See also Stumes v. Solem,* 671 F.2d 1150, 1156–57 (8th Cir. 1982). The crucial inquiry, then, is whether petitioner or the police initiated the communication which led to his incriminating statement. The district court concluded that it was "evident that petitioner, himself, stating that he had something to say, initiated the taking of the video-taped statement." The relevant facts are that on the morning of the 15th, petitioner began knocking on the cell door stating that he had something he wanted to tell. The critical exchange occurred that evening at about 5:30 or 6:00. After returning to the police station, Lieutenant Paladino went into the jail area, apparently responding to petitioner's request that morning to talk to someone.[7] Lieutenant Paladino testified to the following:

Q [Mr. Molock]. After you were called back in and went to the station, did you ever hear Mr. McCree indicate that he wanted to tell someone something?

A [Lieutenant Paladino]. Yes, sir.

Q. What, if anything, did you hear at that time?

A. I went into the jail area, asked him if he wanted to see me. He said something like, "Yes, I've got something I've got to tell you" or "something is on my mind you need to know about" or something like that.

We do not believe that the officer initiated the conversation by merely asking petitioner, in response to an earlier request, whether petitioner wanted to see him. Rather, petitioner initiated the sequence of events which led to the incriminating statement by saying that there was something he wanted to tell the police.

7. Although we are concerned about the amount of time which passed between petitioner's knocking on the cell door and Lieutenant Paladino's response between eight and ten hours later, we cannot say that this version of the facts, as accepted by the district court, is without support in the record.

8. The state has argued that *Edwards* creates a two-prong test which looks first to who initiates subsequent communication and, second, to

### C. Waiver of Right to Counsel

Once it is determined that the accused initiated further communication, it must next be ascertained whether there was further interrogation and, if that is the case, whether the accused knowingly and intelligently waived his right to counsel.[8] *Edwards v. Arizona, supra,* 451 U.S. at 486 n.9, 101 S.Ct. at 1885 n.9; *Fields v. Wyrick,* 682 F.2d 154, 158 (8th Cir. 1982). The government bears a "heavy" burden of proving that a defendant has knowingly and intelligently waived his right to have counsel present during interrogation. *Miranda v. Arizona, supra,* 384 U.S. at 475, 86 S.Ct. at 1628.

In denying petitioner permission to proceed under Rule 37, the Arkansas Supreme Court stated as follows:

A review of the record reveals that petitioner's statement was freely and voluntarily given after he had been fully advised of his rights under *Miranda.* Petitioner was informed that his statement was being videotaped and that he had the right to remain silent, that anything said by him could, and would, be used against him in a court of law, that he could talk with an attorney before giving a statement and have an attorney present during the questioning, and that he could decide at any time to refuse to answer further questions. This warning was in addition to an earlier recital by a police officer of petitioner's "*Miranda Rights*" which were read to him when he was taken into custody. Additionally, the transcript of the videotaped session indicates that petitioner was asked twice more if he wished to consult with counsel

whether there was a valid waiver of counsel. Although *Edwards* creates such a two-prong test, we disagree with the state that the incriminatory statement may be admitted if *either* prong is met. We read *Edwards* as requiring both prongs to be met. Once the right to counsel has been invoked, the accused must both initiate the subsequent communication and validly waive the right to counsel for the statement to be admissible.

before making his statement and that petitioner responded that he wanted to tell "just exactly what happened."

*McCree v. State,* No. CR 78–227 (Ark. Nov. 17, 1980). The findings of the state court are presumed correct. 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ We believe the state has met its burden of showing that petitioner knowingly and intelligently waived his right to counsel. The record shows that the police repeatedly asked petitioner whether he desired to have legal counsel present and that petitioner responded that he did not and that he wanted to tell them what happened. The video taped statement amply demonstrates that petitioner understood that he had the right to have counsel present.

Affirmed.