Michael Ricardo **LEVISTON**, Appellant,

v.

Charles **BLACK**, Warden, Nebraska Penal and Correctional Complex, Appellee.

No. 87–1303.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1987.

Decided April 4, 1988.

Louis Michael Thrasher, Lincoln, Neb., for appellant.

Linda L. Willard, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before JOHN R. GIBSON, BOWMAN and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The sole issue meriting discussion in this appeal is whether Michael Ricardo Leviston was "in custody" for *Miranda* purposes when he made incriminating statements about a robbery, of which he was subsequently convicted, during two interviews with a police officer. At the time, Leviston was incarcerated on an unrelated misdemeanor conviction for assault. Leviston's statements were not preceded by *Miranda* warnings and were introduced into evidence at his state trial for robbery and use of a firearm to commit a felony. Leviston was convicted of these charges and, after exhausting his state remedies, he filed a petition for a writ of habeas corpus with the federal district court.[1] 28 U.S.C. § 2254 (1982). The court conducted an evidentiary hearing and determined that Leviston was not "in custody" within the meaning of *Miranda* on either occasion, so that *Miranda* warnings were not necessary. After considering Leviston's remaining claims, the district court denied the petition, *Leviston v. Black*, No. CV 84–L–304 (D.Neb. Jan. 21, 1987), and this appeal followed. We affirm the judgment of the district court.

We recite the facts stated in the district court's order, which were based on its evidentiary hearing and the findings of the state courts. *See Winfrey v. Wyrick*, 836 F.2d 406, 409–10 (8th Cir.1987).

Leviston's convictions stem from the October 12, 1981 robbery of a savings and loan in Omaha, Nebraska. Approximately one month after the robbery, Leviston was incarcerated in Douglas County, Nebraska due to an unrelated misdemeanor conviction for assault. During that time, Officer Anthony Infantino of the Omaha Police Department was told by his commanding officer, Lieutenant Circo, that Leviston had contacted the Omaha police and asked to speak with someone about the robbery. Infantino went to the jail and met with Leviston in one of the interview rooms, where Leviston stated that he was driving past the bank at the time of the robbery and saw his former girlfriend, Deb Houston, exit the bank as if she had just robbed it. Leviston also implicated Robert Houston, Deb's brother. Infantino said he would check into the information and get back to Leviston.

About two weeks later, Infantino returned and told Leviston that his story had not panned out. Witnesses at the bank did not identify Deb or Robert Houston, and bank photographs of the robber somewhat resembled Leviston. Infantino said he felt someone was unjustifiably trying to implicate Leviston or that Leviston himself may have been involved to some degree in the robbery. Leviston then interrupted, saying, "I'm not going to say I did it, and I'm not going to say I didn't do it. Nobody's going to lay anything off on Baby Ric." Due to the potentially incriminating nature of this statement, and the fact that the name "Baby Ric" had come up in Infantino's investigation of the robbery, Infantino then gave Leviston *Miranda* warnings.

Leviston's statements in the two interviews were introduced at his trial, and a jury returned verdicts of guilt on both the robbery and firearm charges. Leviston appealed to the Nebraska Supreme Court, which granted his appointed counsel's motion to withdraw and summarily affirmed the convictions. *See* Neb.Sup.Ct.R. 3 B(4). Leviston then sought post-conviction relief

---

1. The Honorable C. Arlen Beam, United States Circuit Judge, was Chief United States District Judge for the District of Nebraska at the time of trial.

**304**

in state district court, Neb.Rev.Stat. § 29–3001 (1979), before filing his habeas petition in federal district court.

Leviston argues that his statements during the two interviews were impermissibly admitted into evidence because the statements were made in response to custodial interrogation not preceded by *Miranda* warnings. The district court rejected this claim primarily because it determined that Leviston was not "in custody" for *Miranda* purposes during either interview. On appeal Leviston argues that the district court's factual findings are clearly erroneous, *see, e.g., McCree v. Housewright,* 689 F.2d 797, 800 (8th Cir.1982), and that the court erred as a matter of law in concluding that Leviston was not in custody.[2]

■ "*Miranda* warnings are required for official interrogations only where 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *United States v. Helmel,* 769 F.2d 1306, 1320 (8th Cir.1985) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). While *Miranda* may apply to one who is in custody for an offense unrelated to the interrogation, *see Mathis v. United States,* 391 U.S. 1, 4–5, 88 S.Ct. 1503, 1504–05, 20 L.Ed.2d 381 (1968), incarceration does not *ipso facto* render an interrogation custodial, *Cervantes v. Walker,* 589 F.2d 424, 427 (9th Cir.1978), *cited in Flittie v. Solem,* 775 F.2d 933, 944 (8th Cir.1985) (en banc). In all cases, we must consider the totality of the circumstances, including the individual's "freedom to leave the scene and the purpose, place and length" of the questioning. *Helmel,* 769 F.2d at 1320. The relevant inquiry is whether a reasonable man in the suspect's position would have understood himself to be in custody. *Berkemer v. McCarty,* 468 U.S. 420, 442 & n. 35, 104 S.Ct. 3138, 3151 & n. 35, 82 L.Ed.2d 317 (1984); *United States v. Jones,* 630 F.2d 613, 616 (8th

Cir.1980) (per curiam); *but see United States v. Rorex,* 737 F.2d 753, 756 (8th Cir.1984) (decided before *Berkemer*). When an individual is incarcerated for an unrelated offense, this requires some restriction on his freedom of action in connection with the interrogation itself. *See Cervantes,* 589 F.2d at 427–28.

■ The district court found that Leviston initiated the police inquiry and that both interviews arose out of Leviston's desire to speak with the police about the robbery. The court further found that Leviston voluntarily went to the prison interview room to speak with Infantino on both occasions, that he was free to end the conversations at any time, and that he was allowed to leave upon his own request, although the door to the interview room was locked from the outside. *See Flittie,* 775 F.2d at 942, 944.[3] Both interviews were quite brief, lasting approximately one-half hour each, and there is no suggestion that coercive or "strong-arm" tactics were used during either interview. *See Helmel,* 769 F.2d at 1320. There were conflicts in the testimony, however. Leviston denied calling Lieutenant Circo and testified that he was told by prison guards that he would be handcuffed and taken to the interview room if he refused to go there. The district court was in a far better position to assess the credibility of the witnesses and resolve these conflicts. *See id.; McCree,* 689 F.2d at 800. Having carefully reviewed the record, we cannot say that the district court's factual findings are clearly erroneous, and they demonstrate that Leviston could not reasonably have believed he was in custody with respect to the robbery during either interview. We affirm the district court's dismissal of Leviston's *Miranda* claim.

Leviston has also argued that introduction of Infantino's testimony regarding Lieutenant Circo's statements violated the

---

**2.** The district court also determined that Infantino did not "interrogate" Leviston on either occasion, and that introduction of the statements, even if erroneous, was harmless in the context of this trial. It is unnecessary for us to reach these issues.

**3.** The district court found that Infantino did not inform Leviston that he could end the conversations at will, but that Infantino justifiably felt no need to do so because Leviston had initiated the police inquiry.

Confrontation Clause; that the evidence was insufficient to support his convictions; that the cumulative effect of these alleged trial errors warrants habeas relief; and that the Nebraska Supreme Court failed to make a finding that Leviston's appeal was "wholly frivolous" before granting his appointed counsel's motion to withdraw and summarily affirming his convictions. These matters were fully presented to the district court and carefully considered by it. Having studied the record and the briefs and arguments of the parties, we are satisfied that the district court did not err in dismissing these claims.

The judgment of the district court is affirmed.