**Ricki L. BRADLEY, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 90–797.**

Court of Appeals of Iowa.

May 29, 1991.

Jean C. Lawrence of Mears, Zimmermann & Mears, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Suzie A. Berregaard, Asst. Atty. Gen., for appellee.

Considered by OXBERGER, C.J., and HAYDEN and HABHAB, JJ., but decided en banc.

HABHAB, Judge.

Appellant, Ricki Bradley, appeals a district court ruling denying his challenge to a decision of the prison disciplinary committee. Appellant first contends his due process rights were violated. Specifically, he argues his hearing was not timely. Additionally, he contends he should have been given his *Miranda* rights during the investigation of this matter. The appellant also challenges the sufficiency of the evidence to sustain the charges against him and further complains the disciplinary committee erred in considering the appellant's refusal to take a polygraph examination. He contends the disciplinary committee wrongfully relied on confidential information. We affirm.

In October 1988, Bradley received a disciplinary report alleging he had violated several institutional rules at the reformatory by engaging in an ongoing campaign of threats and violence against a Dubuque woman. At the hearing, Bradley, who appeared without counsel or counsel substitute, denied the allegations. Relying on confidential information, the disciplinary committee found Bradley had violated rules concerning verbal abuse and threats/intimidation. Sanctions were imposed.

On July 7, 1989, Bradley received a second disciplinary notice alleging several rule violations based on his plans to escape from the reformatory and his threats against the Dubuque woman. During the investigation of this matter and prior to his

receipt of notice, Bradley had initially agreed, then refused, to take a polygraph. Bradley was also not given *Miranda* rights. The hearing was originally scheduled for July 15, but the committee decided to add additional rule violations and reconvene on July 18. Following the hearing, the committee found Bradley guilty of several rules and imposed punishment. Appellant brought this postconviction action, after exhausting administrative remedies, in order to challenge the prison disciplinary committee's decision. We affirm.

## I.

 Postconviction relief actions are treated as special proceedings at law and review is on assigned errors only. *Morris v. Auger*, 414 N.W.2d 858, 859 (Iowa App. 1987). A prison disciplinary committee's findings of fact and decision are not subject to Monday morning quarterbacking upon judicial review if there is some evidence to support the committee's decision. *See Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2777, 86 L.Ed.2d 356, 364 (1985). Upon our review of the record, excluding consideration by the committee of the appellant's refusal to submit to a polygraph examination, we find the prison disciplinary committee's decision to be supported by some evidence. *See Wilson v. Farrier*, 372 N.W.2d 499, 501 (Iowa 1985).

## II.

As it relates to the disciplinary committee's consideration of appellant's refusal to take a polygraph examination, both parties to this appeal cite us to *Van Hoff v. State*, 458 N.W.2d 876 (Iowa App.1990), for their discussion of this issue. Although it is one of our opinions, it was not published. Court of appeals cases which are not published cannot be relied on for precedent unless one of the conditions mentioned in Supreme Court Rule 10(f) exists. None of those conditions apply here.

 To clarify our position, polygraph examination evidence should not be used as evidence in disciplinary cases unless the parties stipulate to its use. *Cf. State v. Conner*, 241 N.W.2d 447, 457 (Iowa 1976)

(unstipulated polygraph evidence may not be submitted). It follows then that in its case-in-chief an inmate's refusal to take a polygraph examination should not be used as evidence.

 If this was the only piece of evidence relied on by the committee, error would undoubtedly follow. But from our examination of the record, we find there is some evidence, other than the polygraph evidence, which supports the decision of the disciplinary committee. Under the circumstances here, the consideration by the committee of the polygraph evidence is harmless.

## III.

The appellant also alleges he was denied due process because he was not given *Miranda* warnings. In addition, he claims General Order 35 was violated when the prison authorities failed to inform him of his rights under that rule. We are unable to agree with either of these contentions.

This case involves an application of the *Miranda* rule in a prison setting. We assume that since applicant alleges a violation of his *Miranda* rights, he is taking the position that he was "in custody" at all times during his conversation with prison officials. "Custodial interrogation," which must be preceded by *Miranda* warnings, is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

The question that needs answering is whether a prison inmate is *automatically always* "in custody" within the meaning of *Miranda.* The appellate courts of this state have not yet addressed this issue. The federal circuit courts have and to some extent are divided as to when a prison inmate is "in custody" for *Miranda* purposes.

The Fourth Circuit in *United States v. Conley*, 779 F.2d 970 (4th Cir.1985), rejected an argument that because a prison inmate is in custody, he or she is automatical-

ly entitled to *Miranda* warnings prior to any questions which ultimately may point to involvement in criminal activity. The Fourth Circuit disavowed any such per se approach to prisoner interrogations. In doing so, that circuit distinguished its result in *Conley* from that of *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

In *Mathis* the prisoner was questioned by a government agent about certain tax returns. He was not given *Miranda* warnings. The government argued that for *Miranda* to apply, an inmate must be in custody for the matter to which the questioning relates. The Supreme Court disagreed, holding that even though Mathis was questioned as to matters unrelated to his imprisonment, he nevertheless was entitled to *Miranda* warnings.

The defendant in *Conley*, relying on *Mathis*, sought reversal on the grounds that because he was in custody he was automatically entitled to *Miranda* warnings. The facts in *Conley* are as follows: The defendant was in prison when he was questioned about the murder of a fellow inmate. The inmate, along with others, was with the defendant when they left their cells for breakfast. The victim shortly returned to his cell bleeding from fatal knife wounds. A body search of other inmates, including the defendant, followed. The search revealed a two-inch wrist gouge-type wound on Conley. Conley was handcuffed and taken to a conference room in the prison to await transfer to the infirmary for medical treatment of his wound. When in the conference room, both before and after treatment, Conley discussed the assault on the victim. He initiated the first conversation. He was asked how he was injured. In the course of the discussion, Conley maintained that he had observed two inmates attack the victim and that he had been stabbed in the wrist during a rescue attempt. Later the prison officer asked Conley if "you are up to your same old s–t again." He replied that the victim was a friend but that the victim had a bad attitude. When questioned about the identity of the assailants, he responded that he did not recognize them because they wore ski masks. Conley, relying on *Mathis*, sought to have his statements suppressed on the grounds he was in "custody," thus entitled to *Miranda* warnings.

The *Conley* court concluded there was nothing in the *Mathis* opinion which suggested that an inmate is automatically "in custody" and therefore always entitled to *Miranda* warnings merely by virtue of his prisoner status. *United States v. Conley*, 779 F.2d at 972. The court concluded Conley was not in custody for *Miranda* purposes. It decided, because of the circumstances that existed at the time Conley made his statements, "Conley's freedom of movement cannot be characterized as more restricted than that of other prisoners in transit to and from the facility either by virtue of his confinement or by nature of the questioning by prison personnel." *Id.* at 974.

The Ninth Circuit was faced with a similar problem in *Cervantes v. Walker*, 589 F.2d 424 (9th Cir.1978), in which an inmate argued that because he was imprisoned he was automatically "in custody" within the meaning of *Miranda*. The inmate in *Cervantes* also relied upon the *Mathis* case.

As in *Conley*, the *Cervantes* court declined to give the per se effect to *Mathis* the defendant urged. The *Cervantes* court reasoned:

> To interpret *Mathis* as Cervantes urges, would, in effect, create a per se rule that any investigatory questioning inside a prison requires *Miranda* warnings. Such a rule could totally disrupt prison administration. *Miranda* certainly does not dictate such a consequence. "Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding procedure is not affected by our holding." *Miranda v. Arizona*, supra 384 U.S. at 477, 86 S.Ct. at 1629.
>
> Adoption of Cervantes' contention would not only be inconsistent with *Miranda*, but would torture it to the illogical posi-

tion of providing greater protection to a prisoner than to his non-imprisoned counterpart. We cannot believe the Supreme Court intended such a result. Thus, while *Mathis* may have narrowed the range of possible situations in which on-the-scene questioning may take place in a prison, we find in *Mathis* no express intent to eliminate such questioning entirely merely by virtue of the interviewee's prisoner status.

*Cervantes,* 589 F.2d at 427.[1]

The Eighth Circuit, in evaluating this type of situation used the following analysis:

"*Miranda* warnings are required for official interrogations only where 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *United States v. Helmel,* 769 F.2d 1306 1320 (8th Cir.1985) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). While *Miranda* may apply to one who is in custody for an offense unrelated to the interrogation, *see Mathis v. United States,* 391 U.S. 1, 4–5, 88 S.Ct. 1503, 1504–05, 20 L.Ed.2d 381 (1968), incarceration does not *ipso facto* render an interrogation custodial, *Cervantes v. Walker,* 589 F.2d 424, 427 (9th Cir.1978), cited in *Flittie v. Solem,* 775 F.2d 933, 944 (8th Cir.1985) (en banc). In all cases, we must consider the totality of the circumstances, including the individual's "freedom to leave the scene and the purpose, place and length" of the questioning. *Helmel,* 769 F.2d at 1320. The relevant inquiry is whether a reasonable man in the suspect's position would have understood himself to be in custody. *Berkemer v. Mc Carty,* 468 U.S. 420, 442 & n. 35, 104 S.Ct. 3138, 3151 & n. 35, 82 L.Ed.2d 317 (1984); *United States v. Jones,* 630 F.2d 613, 616 (8th Cir.1980) (per curiam); *but see United States v. Rorex,* 737 F.2d 753, 756 (8th Cir.1984) (decided before *Berkemer* ). When an

individual is incarcerated for an unrelated offense, this requires some restriction on his freedom of action in connection with the interrogation itself. *See Cervantes,* 589 F.2d at 427–28.

*Leviston v. Black,* 843 F.2d 302, 304 (8th Cir.1988).

We likewise hold that we must look to the totality of the circumstances surrounding the interrogation to determine whether the inmate is subject to more than the usual restraint on a prisoner's liberty to depart. This is so for in a prison setting the entire group is under restraint of free movement. As the *Cervantes* court stated: " 'Restriction' is a relative concept and that, in this context, it 'necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement.'" *Cervantes v. Walker,* 589 F.2d at 428. We conclude, as did the Eighth Circuit in *Leviston,* the Fourth Circuit in *Conley,* and the Ninth Circuit in *Cervantes,* that incarceration does not ipso facto render an interrogation custodial.

By this ruling we do not hold that a prison inmate is not entitled to *Miranda* warnings. We merely decide the question must be resolved on a case-by-case basis focusing on the totality of the circumstances, including the individual's "freedom to leave the scene, and the purpose, place, and length" of the questioning. As pointed out in *Leviston,* the relevant inquiry is whether a reasonable person in the suspect's position would have understood himself to be in custody. Helpful in this determination, along with considering the totality of the circumstances, are four detailed factors set out in *Cervantes.* Those four factors are the language used to summon the individual, the physical surroundings of the interrogation, the extent to which the inmate is confronted with evidence of his guilt, and the additional pressure exerted to detain him. *Id.*

1. The *Cervantes* court held that the questioning that took place was an instance of on-the-scene questioning enabling the prison official to determine whether a crime was in progress. The court held *Miranda* warnings were not required. It applied a reasonable person standard and

four factors which we refer to in a later paragraph of this opinion. These factors were applied when determining whether there was an added imposition on Cervantes' freedom of movement.

These factors also bear on the final determination as to whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting. *Id.*

When we consider the totality of the circumstances, and apply the factors aforesaid to the questioning of the appellant, the appellant was not "in custody" for *Miranda* purposes. Thus *Miranda* warnings were not necessary. In this respect, it cannot go unnoticed that the appellant has not in his brief called to our attention any circumstances that he relies on that even remotely calls for *Miranda* warnings.

As it relates to General Order No. 35 at 11B6, the rule that requires certain warnings somewhat similar to *Miranda,* we agree with the applicant that the general order was not followed. However, we conclude that even if we assume that those warnings should have been given, the applicant was not prejudiced in any respect. It cannot go unnoticed that no criminal charges were filed against the applicant nor were any contemplated at the time of his questioning. It is also clear that if indeed he made any incriminating statements, there are no criminal proceedings pending in which they would be used.

### IV.

We must also consider appellant's due process arguments. The appellant contends the institution violated his rights by failing to hold his hearing in a timely manner. We conclude the hearing was timely held and in accordance with applicable rules. We affirm on this issue.

We have considered all statements of issues advanced by the appellant, whether mentioned in the opinion or not, and find them to be without merit. We affirm the district court in all respects.

AFFIRMED.

All Judges concur except SCHLEGEL and SACKETT, JJ., who dissent.

SCHLEGEL, Judge (dissenting).

I must respectfully dissent to a portion of the majority opinion in this case.

First, to hold that because there is "some evidence" of the violations, while the proper test of our rule to uphold the finding of violation of prison rules, it would be helpful to set out what evidence is sufficient to render the improper use of Bradley's refusal to submit to a lie detector test harmless. The raw statement of the majority that the existence of some other evidence (without some explanation) renders it harmless leaves us without any rule by which to measure its effect. It may well be that the reference to that refusal caused no prejudice in view of the evidence in the record. If so, we should explain why.

Perhaps of a more serious nature, the majority, for all its explanation, seeks to find that a warning of a prisoner's rights is not necessary. To me, to determine that one being imprisoned is not "in custody" is ludicrous. *Miranda* was designed not to make life difficult for police and security officials. It was based upon the fact that all people have a right against self-incrimination and that they may give up that right if they are appropriately warned. Those rights apply to a prisoner in a jail or penitentiary. I cannot agree that to extend the *Miranda* warnings to prisoners by a per se rule would extend to them a greater right than is extended to those who are not prisoners. If a routine requirement of the assurance of the rights existed, it would only produce a set procedure that all involved would understand.

If there are no criminal charges anticipated from this interrogation, then we should not be pronouncing a rule which is, for the purposes of this case, unnecessary. We should be careful in our effort to distinguish *Mathis.*

I believe that this case can be affirmed on different grounds. On the basis of the majority opinion, however, I can but dissent.

SACKETT, J., joins this dissent.