# IN THE COURT OF APPEALS OF IOWA

No. 14-1661
Filed March 23, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEITH TERELL BASS SR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mark J. Smith,

Judge.


        Keith Bass Sr. appeals his conviction for sexual abuse.  **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Sharon K. Hall,

Assistant Attorneys General, for appellee.



        Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**BOWER, Judge.**

Keith Bass Sr. appeals his conviction for sexual abuse in the third degree, claiming the district court erred in denying his motion to suppress statements he made to law enforcement. We affirm.

On April 25, 2014, the State filed a trial information charging Bass with sexual abuse in the third degree in violation of Iowa Code sections 709.1(1), 709.4(1) or (4), 702.17, and 703.1 (2013). Following a jury trial, Bass was found guilty. The district court sentenced him to a term of imprisonment not to exceed ten years, a fine, and lifetime probation.

On appeal Bass claims law enforcement obtained statements from him on three occasions, which violated his privilege against compulsory self-incrimination under the United States and Iowa Constitutions. Therefore, he claims the trial court erred in overruling his oral motion to suppress those statements. Law enforcement did interview Bass on three occasions regarding the sexual abuse investigation. Bass was in jail on unrelated drug charges during the interviews.

Our review of constitutional issues is de novo. *State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012).

After hearing the parties' statements on Bass's motion to suppress, the district court ruled:

> Given what I've heard and my knowledge of the case law in this regard, it is a statement of a party opponent. It does apply to the fact that the defendant admitted he had sex with the alleged victim, which is an element of the offense.
> The issue of the *Miranda* warning is an issue as to whether or not he was under a custodial arrest for this offense. Given the

testimony, the Court finds that he was not under custodial arrest for this offense and he had the right by simply pushing the button to leave the cell—leave the interview room and return to his cell.

The other thing is the statements appear to be initiated by the defendant as opposed to in the form of interrogation by the officer—or by the detective and, therefore, the Court finds that those statements were voluntarily made by the defendant without the—without the detective interrogating the defendant in regard to the issues at hand. So, therefore, for those reasons, the Court overrules the motion—the oral motion to suppress.

*Miranda* warnings are required only when the defendant is in custody or is otherwise deprived of his freedom of action in a significant way. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Incarceration does not automatically render an inmate in custody for purposes of *Miranda. Leviston v. Black*, 843 F.2d 302, 304 (8th Cir. 1988); *Bradley v. State*, 473 N.W.2d 224, 228 (Iowa Ct. App. 1991).

In the prison context there must be some added restriction on the inmate's freedom of movement stemming from the interrogation itself to find custody. *Leviston*, 843 F.2d at 304; *State v. Deases*, 518 N.W.2d 784, 789 (Iowa 1994) (considering custodial interrogation in the prison setting). The focus is on whether a reasonable person in the inmate's position would understand himself to be in custody. *Leviston*, 843 F.2d at 304. "Relevant factors in making this determination include the language used to summon the individual, the purpose, place and manner of the interrogation, the extent to which the defendant is confronted with evidence of his guilt, and whether the defendant is free to leave the place of questioning." *Deases*, 518 N.W.2d at 789. Upon our de novo review, we find no constitutional violation.

Additionally, as the State notes, a party's voluntary statements, obtained in violation of *Miranda*, are admissible for impeachment when the party takes the

stand and gives inconsistent testimony. *See State v. McCoy*, 692 N.W.2d 6, 30–31 (Iowa 2005) ("[T]he State may use illegally obtained evidence to impeach if the defendant testifies, 'provided of course that the trustworthiness of the evidence satisfies legal standards.'" (citing *Harris v. New York*, 401 U.S. 222, 224 (1971))). Even if the Bass's statements were made in violation *Miranda*, the statements were voluntarily made and the State properly used the statements to impeach Bass once he made inconsistent statements at trial.

We affirm the district court's ruling without further opinion pursuant to Iowa Court Rule 21.26(1)(a), (c), and (e).

**AFFIRMED.**

Vogel, P.J., concurs; Vaitheswaran, J., dissents.

**VAITHESWARAN, Judge.** (dissenting)

I respectfully dissent. I believe officers subjected Bass to a custodial interrogation without affording him *Miranda* warnings, in violation of his Fifth Amendment rights under the United States Constitution.

The pertinent facts are as follows. During the investigation of this crime, Davenport Detective Karl Drezek met with Bass three times at the Scott County jail. Bass was in jail on unrelated drug charges. According to Drezek, Bass denied any sexual contact during the first interview. During the second interview, Bass changed his story and admitted to consensual sex. During the third interview, Bass demanded an attorney, provided DNA samples, and again stated he had consensual sex.

At trial, the State expressed an intent to have Drezek testify. Bass's attorney objected and questioned Drezek outside the presence of the jury for purposes of making an objection. Following the questioning, he asserted, in part, "[T]hese statements . . . were taken in violation of the defendant's rights against self-incrimination under the Fifth Amendment of the Federal Constitution as well as the Iowa Constitution and the Sixth Amendment right to counsel."

The State countered that Bass's statements were admissions of a party opponent. The State failed to challenge defense counsel's Fifth Amendment objection on the ground that it should have been raised in a pretrial motion to suppress and was waived for failure to follow this procedure. *See* Iowa R. Crim. P. 2.11, (3), (4) (requiring motions to suppress to be filed "no later than 40 days after arraignment").

The district court questioned the timeliness of counsel's objection as follows:

> [T]the appropriate manner of addressing this is in a motion to suppress to allow the Court time to research the issue and come to a conclusion based on that research. Given the fact that this is an oral motion at this time, the Court is prevented from doing that. We have had a jury waiting since 9:00 to have this matter completed and, therefore, the Court is unwilling to take additional time out of the jury's life to address this issue.

Nonetheless, the court overruled the Fifth Amendment objection on the merits, after concluding Bass was not subjected to custodial interrogation. Drezek testified in open court, summarizing the evidence and statements obtained from Bass during the investigation.

On appeal, the State begins with a procedural argument in favor of avoiding the Fifth Amendment issue. The State asserts, "Bass should not be permitted to ignore the mandatory rule [on suppression motions] and put both the prosecution and the court at a disadvantage in having to respond and rule on the spot without prior notice of the alleged constitutional violations." The State concedes, however, that the prosecutor never raised the timeliness issue in the district court. This omission precludes the State from raising the issue on appeal. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) ("[W]e will not consider a substantive or procedural issue for the first time on appeal, even though such issue might be the *only* ground available to uphold a district court ruling."). In addition, the State acknowledges an Iowa Supreme Court opinion finding no abuse of discretion where the district court considered a belated suppression motion on the merits, when the failure to file a meritorious timely motion would

have constituted ineffective assistance of counsel. *See State v. Ortiz*, 766 N.W.2d 244, 249-50 (Iowa 2009) ("To avoid additional litigation in this matter the court did the proper thing by considering the motion rather than waiting for its merits to be determined in a postconviction relief proceeding. Accordingly, the district court did not abuse its discretion in hearing the motion under the circumstances of this case.").[1] Based on this precedent, I believe the district court and majority appropriately reached the merits of Bass's Fifth Amendment objection to Drezek's testimony. *See State v. Grady*, No. 10-1532, 2012 WL 1611964, at *2 n.3 (Iowa Ct. App. May 9, 2012) ("Because the State did not object to the timeliness of the motion and the district court considered the matter and ruled on the merits, we need not review this as an ineffective-assistance-of-counsel claim.").

I now turn to the merits. I am obligated to view the totality of the circumstances when a constitutional violation is alleged.

The Fifth Amendment states, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect the Fifth Amendment privilege against self-incrimination from the "inherently compelling pressures" of questioning by the police, a *Miranda* warning is to be given before custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 467

---

[1] I recognize precedent stating "[e]ven though the State did not resist the motion in the district court as untimely and unexcused for good cause, we will uphold the ruling on the admissibility of the evidence on this or any other ground appearing in the record, whether urged or not." *See State v. Terry*, 569 N.W.2d 364, 368 (Iowa 1997). In *DeVoss*, the Iowa Supreme Court reaffirmed this language with respect to evidentiary rulings. *DeVoss,* 648 N.W.2d at 63. However, in *Ortiz*, 766 N.W.2d at 250, the court cited *Terry* but declined to follow its precept. Reading these cases in tandem, I believe the State had an obligation to challenge the objection as an untimely suppression motion if it wished to rely on this ground in its appeal brief.

(1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of . . . freedom of action in any significant way." *Id.* at 444. The officer must advise the suspect of the suspect's right to remain silent, that any statement made may be used as evidence against the suspect, and the right to the presence of an attorney, either retained or appointed. *Id.* at 444-45. The interrogation must cease if the suspect invokes the right to counsel. *See State v. Peterson*, 663 N.W.2d 417, 425 (Iowa 2003).

"Incarceration does not automatically render an inmate in custody for purposes of *Miranda.*" *State v. Deases*, 518 N.W.2d 784, 789 (Iowa 1994).

> In the prison context there must be some added restriction on the inmate's freedom of movement stemming from the interrogation itself. The focus is on whether a reasonable person in the inmate's position would understand himself to be in custody. Relevant factors in making this determination include the language used to summon the individual, the purpose, place and manner of the interrogation, the extent to which the defendant is confronted with evidence of his guilt, and whether the defendant is free to leave the place of questioning.

*Id.* (citations omitted).

As noted, Bass had three encounters with police during the investigation of this matter. During all three encounters, he was in custody for another crime. Accordingly, there needed to be some added restriction rendering the confinement custodial. In my view there was.

Detective Drezek stated Bass did not have the ability to leave the county jail. Drezek declined to give Bass *Miranda* warnings during any of the three encounters.

During the first encounter, Drezek informed Bass "he was the suspect in a sexual offense" and Drezek "would like to . . . get a statement from him." Bass denied having sexual contact.

The second encounter took place in a small room. A deputy from central control had to buzz the door to allow entry into or exit from the room. While Drezek stated he lacked the ability to prevent the button from being pushed, the power to push the button was clearly not in the hands of Bass, even if Bass's hands were free. They were not; Bass was in handcuffs.

During the second encounter, Drezek served Bass with an order to provide a DNA sample. The order enumerated certain rights possessed by Bass, including a statutory right to an attorney. *See* Iowa Code § 810.8 (2013); *Curtis v. State*, No. 06-1045, 2008 WL 3916446, at *3 (Iowa Ct. App. Aug. 27, 2008); *State v. Nagel*, 458 N.W.2d 10, 12 (Iowa Ct. App. 1990). Drezek did not read the order to Bass but informed him of his right to an attorney. According to Drezek, Bass asked him questions and he responded with answers and information. Drezek admitted to confronting Bass with his prior denial of sexual contact. While he asserted Bass could have stopped the conversation and asked to leave, he conceded he did not tell Bass he was free to go. During the conversation, Bass admitted to consensual sex.

The purpose of the third encounter was to obtain the DNA samples. *See* Iowa Code § 810.12 (requiring service of order "not later than twelve hours prior to the time of the person's required participation"). At this meeting, Bass requested an attorney. Detective Drezek responded that if Bass wanted an

attorney he would have to make his own arrangements. Bass said he was unable to contact an attorney while in the county jail.

I believe Detective Drezek's encounters with Bass were custodial and Drezek interrogated Bass during the interviews. In my view, *Miranda* warnings were required. Because none were given, I would conclude Bass's statements and DNA samples were obtained in violation of his Fifth Amendment right against self-incrimination.

The next question is whether admission of the evidence amounted to harmless error. *See Peterson*, 663 N.W.2d at 430-31. To establish harmless error in this context, "the State must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 431. This requires an inquiry into the evidence the jury actually considered and a weighing of the probative force of all the evidence against the probative force of the erroneously admitted evidence standing alone. *See id.*

The State presented testimony from the following witnesses: (1) the woman claiming to have been sexually assaulted; (2) the woman's daughter, who described her mother's emotional state; (3) a Davenport police officer who contacted the woman and obtained evidence; (4) a crime scene technician, who described the evidence; (5) a nurse, who recounted what the woman said to her at the hospital and described her examination of the woman; (6) a criminalist, who found DNA evidence to be "consistent with the known DNA profile of Keith Bass, Sr."; and (7) the testimony of Drezek as discussed above. The defense, offered Bass as a witness. He testified to consensual sex with the woman.

To uphold the district court's ruling, I would have to conclude "the erroneously admitted statements are so unimportant in relation to everything else the jury considered that there is no *reasonable possibility* they contributed to" Bass's conviction. *Id.* at 434. I cannot reach this conclusion.

Drezek obtained the DNA samples from Bass after Bass requested counsel.[2] Without these DNA samples, the criminalist would not have had a known profile of Bass with which to compare the DNA evidence obtained in the woman's apartment. After Bass testified, the State recalled Drezek to the stand and elicited the statements Bass made during the custodial interrogations. While the record already contained Bass's admission to consensual sex, it did not contain the contradictory statements Bass made before and after being confronted with the State's evidence. Because the standard only requires a reasonable possibility rather than a reasonable probability that the erroneously-admitted evidence contributed to the finding of guilt, I would conclude the error in admitting the evidence was not harmless and requires reversal. *See State v. Cullen*, 357 N.W.2d 24, 28 (Iowa 1984) ("The difference between a possibility and a reasonable probability is significant."), *abrogated on other grounds by Ryan v. Arneson*, 422 N.W.2d 491 (Iowa 1988); *see also State v. Neiderbach*, 837 N.W.2d 180, 226 (Iowa 2013) ("[A] reasonable probability lies somewhere between 'mere possibility' and 'more likely than not.'" (citation omitted)).

---

[2] I do not analyze the statutory right to counsel or whether this right is co-extensive with the Sixth Amendment right to counsel. Instead, my analysis flows from the Fifth Amendment.