**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Guadalupe A. ROBLEDO, Defendant–Appellee.**

**No. 92SA140.**

Supreme Court of Colorado, En Banc.

July 13, 1992.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Leslie C. Hansen, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Wayne L. Cole, Kimberly A. Grogan, Deputy State Public Defenders, Denver, for defendant-appellee.

Chief Justice ROVIRA delivered the Opinion of the Court.

In this interlocutory appeal pursuant to C.A.R. 4.1, the People challenge an order of

the Denver District Court suppressing statements made by the defendant, Guadalupe Robledo, to a counselor at the Gilliam Youth Center (Gilliam), a juvenile detention center in Denver. The trial court found that the defendant's statements, while not coerced, were obtained in violation of his *Miranda* rights. We affirm.

## I

The defendant is charged with first-degree murder in violation of section 18–3–102(1)(a), 8B C.R.S. (1986), and mandatory sentences for violent crimes in violation of section 16–11–309, 8A C.R.S. (1991 Supp.), in connection with the shooting death of Steven Maldonado. Following his arrest in August 1991, but before charges were filed, the defendant was incarcerated at Gilliam. While there, he asked to speak with Earl Redmond who was employed at Gilliam as a counselor and as the client manager for New Pride, a home detention program. Redmond's duties included determining which juveniles were qualified for the home monitoring program and helping them with scheduling, court dates, and attorney relations. The defendant and Redmond knew each other from past experiences at Gilliam.

Redmond met with the defendant, at which time Robledo informed him that he was concerned about his court date and what was happening with his case.[1] Redmond obtained the defendant's police report, discussed it with the probation officer assigned to Gilliam, and then again met with the defendant and told him "what was going on." Redmond then asked the defendant: "How did you get hooked up in this type of mess?" The defendant then proceeded to tell Redmond his side of the story, including that he shot the victim out of anger after a fight.

Before his trial, the defendant filed a motion to suppress statements made to Redmond arguing that they were made before he was advised of his *Miranda* rights and were constitutionally involuntary. Following an evidentiary hearing, the trial court found that the defendant was in custody, that Redmond was an agent of the state, and that the defendant should have been advised of his *Miranda* rights before being questioned by Redmond. The People appeal, contending that a *Miranda* warning was not required because Redmond was neither a law enforcement official nor was he acting as an agent of a law enforcement official.

## II

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the prosecution may not use statements made during custodial interrogation of a defendant unless the prosecution demonstrates that the defendant was adequately advised of his privilege against self-incrimination and his right to counsel, and thereafter voluntarily, knowingly and intelligently waived those rights. *Id.* at 479, 86 S.Ct. at 1630. Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody...." *Id.* at 444, 86 S.Ct. at 1612. "[T]hus *Miranda* by its own terms applies only to actions of law enforcement officials." *People v. Chastain,* 733 P.2d 1206, 1213–14 (Colo.1987). State action has been extended to include civilians acting as agents of the state in order to prevent law enforcement officials from circumventing the *Miranda* requirements by directing a third party to act on their behalf. *Id.*

There is no dispute that the defendant was in custody at the time he made the statements at issue. The People argue, however, that *Miranda* warnings were not required because Redmond was not a law enforcement official, nor was he acting as the agent of a law enforcement official.

■ Determination of whether an individual is acting as an agent of the police requires examination of the totality of the circumstances. *People in Interest of*

---

1. The People state that the conversation with Redmond took place before the defendant was charged. The record, however, reflects that Redmond was uncertain as to when the conversation took place.

*P.E.A.*, 754 P.2d 382, 385 (Colo.1988). Our role as an appellate court is to review the record to determine whether the trial court's findings of fact are adequately supported by competent evidence and whether the court applied the correct legal standard to these findings in resolving the issue before it. *Cf. People v. Hamilton*, 831 P.2d 1326, 1330 – 1331 (Colo.1992) (defining appellate court's role in reviewing the trial court's determination of the issue of custodial interrogation).

In resolving whether Redmond acted as an agent of the state, the trial court considered evidence surrounding Redmond's employment. Redmond's duties included investigating and interviewing juveniles to determine whether they were qualified for home monitoring. He was also authorized by the state to apprehend, handcuff and detain juveniles under certain circumstances, for example, if they were fighting or attempting to escape. Redmond had access to police reports and he reviewed the defendant's police report. And, according to state procedure, Redmond was required to report any information he learned which might cause or had caused bodily harm to another person.[2] Finally, Redmond was under contract with the state and was paid by the state to perform these duties. Following examination of the totality of the circumstances, the trial court concluded that Redmond was acting as an agent of the state. After reviewing the record, we conclude that the trial court's findings of fact are supported by competent evidence and that the trial court applied the correct legal standard.

The People rely on *People v. Chastain*, 733 P.2d 1206 (Colo.1987), to support their position that there was no state action. In *Chastain*, a security guard at a hospital was determined not to be an agent of the state, in part because he was not paid by any public agency. Here, the record reveals that Redmond was paid by the state. The People also cite *United States v. Morales*, 834 F.2d 35 (2nd Cir.1987), where

statements made to a physician's assistant at a correctional facility were held admissible. The statements were admissible because the physician's assistant had no investigative purpose, had no responsibility to investigate, and was only questioning the defendant out of curiosity. Redmond's responsibilities, however, included a duty to work with the juveniles and his questioning did not stem from mere curiosity but occurred after reading the defendant's police report and discussing the case with the probation officer. In *State v. Olson*, 449 N.W.2d 251 (S.D.1989), a case which the People find particularly analogous to this case, a counselor at a prison was deemed not to be a law enforcement officer. Unlike Redmond, however, that counselor had no duty to report incidents he learned about through interviews with the inmates. Furthermore, in *Olson*, no investigation was under way when the defendant made incriminating statements to the counselor. Another case relied on by the People is *United States v. Rogers*, 921 F.2d 975 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990). In that case, a *Miranda* warning was not required because "[a] routine post-conviction presentence interview by a probation officer does not constitute the type of inherently coercive situation and interrogation by the government for which the *Miranda* rule was designed." *Id.* at 979. The circumstances here did not involve a post-conviction presentence interview.

We do not find that the cases upon which the People rely support its contention that Redmond was not the agent of a law enforcement official. Redmond was paid by the state, he was aware that his questioning was likely to elicit an incriminating response, and he was obligated to inform the district attorney of the information he learned. The potential coercion, which a *Miranda* advisement is meant to prevent, is as great under these circumstances as in a situation stemming from custodial inter-

---

**2.** It is unclear from the record to whom Redmond was required to report; however, it appears that in this case he reported the information to the district attorney.

rogation by a police officer. A *Miranda* advisement is required to allay that potential coercion. Failure to give the defendant a *Miranda* advisement violated his due process rights and his statements were correctly ruled inadmissible.

Accordingly, the ruling of the trial court suppressing the statements is affirmed.