The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Jeremy DENISON, Defendant–Appellee.

No. 96SA95.

Supreme Court of Colorado, En Banc.

June 17, 1996.

Edward J. Rodgers, District Attorney, Eleventh Judicial District, C.M. Barton, Deputy District Attorney, Cañon City, for Plaintiff–Appellant.

Law Office of Theresa M. Cisneros, Theresa M. Cisneros, Colorado Springs, for Defendant–Appellee.

Chief Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order entered by the Fremont County District Court suppressing

statements made by the respondent to the sheriff regarding an assault which occurred in the jail while the respondent was housed in the jail. The sheriff did not advise the respondent of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before questioning the respondent about the assault. The district court ruled that the sheriff was required to inform the respondent of his *Miranda* rights before questioning him. We reverse the trial court's ruling.

## I.

The respondent, Jeremy Denison (Denison), was incarcerated in the Chaffee County Jail on a charge of first degree murder. On April 27, 1995, at 7:50 a.m., the Sheriff's Office dispatch advised the Chaffee County Sheriff, Ron Bergmann (Sheriff Bergmann), that there was an unspecified problem at the jail. Sheriff Bergmann then arrived at the jail at approximately 8:05 a.m., where he spoke with Deputy Keith Franklin (Deputy Franklin). Deputy Franklin informed Sheriff Bergmann that there had been an altercation between Denison and another inmate, Doug Kibel (Kibel). Deputy Franklin first learned of the problem when Kibel pounded on the door of cellblock three, where Denison and Kibel were confined. When Deputy Franklin responded, Kibel told the deputy that he had been struck in the face by Denison.

When Sheriff Bergmann interviewed Kibel, Kibel stated that at approximately 7:30 a.m., he had been watching television in the dayroom when he and Denison got into an argument regarding which channel they would watch. Kibel stated that as a result of the argument, Denison struck him in the face with his fist. Sheriff Bergmann observed a red mark and some swelling on Kibel's left cheek.

Sheriff Bergmann proceeded to cellblock three after speaking with Kibel. Cellblock three consists of a dayroom, two bunk areas, and a hallway connecting the three rooms. The doors between the three rooms were unlocked and the inmates were free to walk around the different areas within cellblock three. When Sheriff Bergmann arrived, he was the first officer to contact Denison after the altercation. Denison was in one of the bunk areas along with another inmate.

At approximately 8:10 a.m., Sheriff Bergmann stood at the entrance of the bunk area and asked, "What's happening?" Denison stated that he had tuned the television to the MTV channel in the morning. Sheriff Bergmann asked Denison, "Was anyone else watching TV at the time?" Denison responded that Kibel was in the shower when he turned on the television. Sheriff Bergmann then asked, "Was that it?" Denison stated that when Kibel arrived in the dayroom, he changed the channel and did not show Denison any respect. Denison stated that he then hit Kibel. Sheriff Bergmann asked Denison if he had been struck or injured. Denison showed Sheriff Bergmann his hands, looked at the sheriff, shook his head and said no. Sheriff Bergmann did not give Denison an advisement of his *Miranda* rights before questioning him. During this exchange, Denison was not restrained and did not indicate that he wished to leave or not talk to the sheriff. Sheriff Bergmann later learned that Kibel had sustained a fracture to his jaw as a result of the altercation with Denison.

Denison was charged with assault in the second degree pursuant to section 18–3–203(1)(g), 8B C.R.S. (1986). Denison made a motion to suppress statements and evidence, and an evidentiary hearing was held on January 22, 1996. The trial court issued an order dated February 27, 1996 suppressing all statements made by Denison to the sheriff.

## II.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that prosecutors may not use statements made during a custodial interrogation of a suspect unless the prosecution demonstrates that the suspect was adequately advised of his rights. *People v. Robledo,* 832 P.2d 249, 250 (Colo. 1992). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody." *Id.* If a person is not in custody in the *Miranda* sense, then no warning of

rights need precede an official interrogation. *Lowe v. United States,* 407 F.2d 1391 (9th Cir.1969).

■ The United States Supreme Court in *Miranda* provided that courts will not consider a person to be in custody in certain circumstances:

[The *Miranda*] decision is not intended to hamper the traditional function of police officers in investigating crime.... Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.... In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

*Miranda,* 384 U.S. at 477–78, 86 S.Ct. at 1629–30. Thus, an on-the-scene investigation, or questioning which enables an officer to determine what has happened and who has been injured, is not an interrogation under *Miranda* or its progeny. *United States v. Scalf,* 725 F.2d 1272, 1276 (10th Cir.1984).

The issue of whether a person incarcerated for one offense, but who is being questioned for a separate offense committed while incarcerated, is "in custody" during questioning for purposes of *Miranda,* is one of first impression in Colorado. Several other jurisdictions, however, have addressed this issue and their opinions are instructive. In *Cervantes v. Walker,* 589 F.2d 424 (9th Cir.1978), a jail inmate was questioned regarding possible possession of marijuana which was discovered when officers moved him from one cell to another following his involvement in a fight. The officers did not advise the inmate of his *Miranda* rights before questioning him. The Ninth Circuit Court of Appeals found that questioning by the deputy sheriff constituted an on-the-scene investigation and thereby fell outside the requirements of *Miranda. Cervantes,* 589 F.2d at 427.

■ The *Cervantes* court stated that the traditional test of custody was inapplicable in a jail setting because "it would lead to the conclusion that all prison questioning is custodial because a reasonable prisoner would always believe he could not leave the prison freely." *Id.* at 428. Instead of the traditional "free to leave" standard for custody, the court in *Cervantes* applied a "restriction" standard which, in the prison setting, implies a change in the surroundings of the prisoner that results in an added imposition on his freedom of movement. *Id.* In determining whether an inmate has been restricted so as to require the advisement of *Miranda* rights, four factors are to be considered: (1) the language used to summon the individual; (2) the physical surroundings of the interrogation; (3) the extent to which he is confronted with evidence of his guilt; and (4) the additional pressure exerted to detain him. *Id.*

A majority of jurisdictions ruling on the issue have adopted the *Cervantes* reasoning in determining whether an on-the-scene investigation has occurred when an inmate is questioned regarding an incident which occurs in a jail or prison while the inmate is housed in the facility. In *United States v. Scalf,* 725 F.2d 1272, the Tenth Circuit Court of Appeals found that a security officer's questions of a federal inmate who had been named as a suspect in a stabbing did not amount to a custodial interrogation under *Miranda. Scalf,* 725 F.2d at 1276. Rather, the questioning was found to be an on-the-scene investigation specifically exempted from the *Miranda* requirements. *Id.* Although the inmate had been locked down after the stabbing, the *Scalf* court found that this did not amount to the "interrogation environment created by the interplay of interrogation and custody which would subjugate the individual to the will of his examiner and thereby undermine the privilege against compulsory self-incrimination." *Id.*

Similarly, in *United States v. Conley,* 779 F.2d 970 (4th Cir.1985), the Fourth Circuit Court of Appeals held that an inmate was not subject to a custodial interrogation when he was handcuffed and questioned by officers while the officers were taking him to an infirmary after a stabbing. *Id.* at 973. The *Conley* court found that although the inmate was restrained by handcuffs, he was not more restricted than other prisoners in transit to and from the prison facility. *Id.* at 974.

The court in *Conley* thus determined that the inmate was not in custody for *Miranda* purposes and was not entitled to a *Miranda* advisement. *Conley*, 779 F.2d at 973; *see also Garcia v. Singletary*, 13 F.3d 1487 (11th Cir.1994); *United States v. Willoughby*, 860 F.2d 15 (2d Cir.1988); *Leviston v. Black*, 843 F.2d 302 (8th Cir.1988); *State v. Baker*, 850 S.W.2d 944 (Mo.App. E.D.1993).

■ In the case before us, we initially find that Sheriff Bergmann's questioning of Denison constituted an on-the-scene investigation. The sheriff acted in immediate response to recently acquired information in order to determine whether a crime had been committed. At the time Sheriff Bergmann spoke with Denison, the sheriff had information concerning a possible assault, but did not yet have reason to believe that Denison had committed an assault. Sheriff Bergmann testified at the suppression hearing that he interviewed Denison because he had only heard Kibel's version of the altercation and therefore had not determined what had occurred. The sheriff further testified that before he spoke with Denison, he did not know if Denison had assaulted Kibel, or if Denison had merely acted in self defense after being first assaulted by Kibel. Thus, Sheriff Bergmann interviewed Denison to determine what had happened and who was injured. Based on the facts of this case, we conclude that Sheriff Bergmann's interview of Denison constituted an on-the-scene investigation.

■ We next turn to the question of whether Denison was restricted in a manner that would have required a *Miranda* advisement. In applying the four factors set out in *Cervantes*, we hold that Denison was not restricted while being questioned by Sheriff Bergmann so that the sheriff was required to advise him of his *Miranda* rights. First, the sheriff did not summon Denison, and his first words to Denison[1] did not involve restrictive language. Second, although the physical surroundings at the time of the interview consisted of a jail cell, it was the same jail cell in which Denison had been housed for some time. The bunk area was unlocked and open, there were two other open rooms, and another inmate was present during the questioning. Third, Sheriff Bergmann did not confront Denison with evidence of his guilt. Rather, the sheriff asked open-ended questions such as "What's happening?" and "Was that it?" The sheriff's other questions, such as whether anyone else was watching television when Denison set the channel and whether Denison had been struck or injured, were inquisitive rather than accusatory. Finally, there was no evidence of additional pressure exerted in order to detain Denison. Denison was not told that he was under arrest for assaulting Kibel, he was not handcuffed, and he was not moved anywhere in the jail for questioning purposes. Based on these factors, there was absolutely no change in Denison's surroundings which resulted in an added imposition on his freedom of movement and therefore no restriction.

The current case is distinguishable from *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), which the respondent cites for the proposition that an inmate must be advised of his *Miranda* rights prior to any questioning. There, the United States Supreme Court did not address the on-the-scene investigation exception to the *Miranda* requirement. Rather, the *Mathis* court simply held that an Internal Revenue Service agent may not interrogate a prison inmate about tax matters without first advising him of his *Miranda* rights, and the fact that the defendant was imprisoned on an unrelated matter did not necessarily remove the need for *Miranda* warnings. *Mathis*, 391 U.S. at 4–5, 88 S.Ct. at 1504–05. Nothing in *Mathis*, however, suggests that an inmate is automatically "in custody" and therefore entitled to *Miranda* warnings merely by virtue of his prisoner status. *Conley*, 779 F.2d at 972–73 (expressly declining to read *Mathis* as compelling the use of *Miranda* warnings prior to all prisoner interrogations, and holding instead that a prison inmate is not automatically always in custody within the meaning of *Miranda*); *see also Willoughby*, 860 F.2d at 23; *Leviston*, 843 F.2d at 304; *Scalf*, 725 F.2d at 1275; *Cervantes*, 589 F.2d at 427. In fact, the United States Supreme Court has stated

---

1. Sheriff Bergmann's first words to Denison were "What's happening?"

**1118**

that the bare fact of custody may not in every instance require a *Miranda* warning, even when the suspect is aware that he is speaking to an official. *Illinois v. Perkins,* 496 U.S. 292, 299, 110 S.Ct. 2394, 2398–99, 110 L.Ed.2d 243 (1990). Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated. *Perkins,* 496 U.S. at 296, 110 S.Ct. at 2396–97; *Berkemer v. McCarty,* 468 U.S. 420, 437, 104 S.Ct. 3138, 3148–49, 82 L.Ed.2d 317 (1984).

Our decision in *People v. Lee,* 630 P.2d 583 (Colo.1981), is likewise distinguishable from the current case. There, a juvenile was in custody on a bench warrant for an unrelated matter when he was questioned three times over two days, without being advised of his *Miranda* rights, about a homicide that had occurred close to where he was arrested on the day of his arrest. We held in *Lee* that the interrogation violated the defendant's Fifth Amendment rights because he was not advised of his rights pursuant to *Miranda. Lee,* 630 P.2d at 589–90. However, significant facts were present in *Lee* that are not present in the case before us. First, the investigation in *Lee* was not an on-the-scene investigation, such as an inquiry concerning an incident which occurred in jail while the defendant was housed in the jail. Moreover, the defendant was questioned three separate times over two days, indicating that the questioning was not an immediate on-the-scene response to an incident. Thus, our decision in *Lee* does not preclude us from holding here that an inmate need not be advised of his *Miranda* rights when he is questioned during an on-the-scene investigation.

### III.

We conclude that Sheriff Bergmann's questioning of Denison did not constitute a custodial interrogation and thus did not require an advisement of *Miranda* rights. The sheriff was merely engaging in an on-the-scene investigation and Denison was not in custody for *Miranda* purposes during the questioning. We therefore reverse the dis-

trict court's order suppressing the statements Denison made to the sheriff.