**The PEOPLE of the State of Colorado, Plaintiff–Appellant.**

v.

**Cirilo GONZALEZ–ZAMORA, Defendant–Appellee.**

No. 10SA22.

Supreme Court of Colorado, En Banc.

May 16, 2011.

Mitchell R. Morrissey, District Attorney, Second Judicial District Robert J. Whitley, Chief Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Nancy Holton, Deputy Public Defender, Siddhartha Rathod, Deputy Public Defender, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice EID delivered the Opinion of the Court.

The prosecution brought this interlocutory appeal pursuant to C.A.R. 4.1 from an order of the Denver District Court suppressing statements made by defendant, Cirilo Gonzalez–Zamora, at the Palm Beach County Police Station after having been read his *Miranda* rights. The district court suppressed the statements both for the involuntariness of defendant's *Miranda* waiver and for the involuntariness of defendant's statements made after the waiver. We hold that defendant's *Miranda* waiver and statements were both voluntary and, accordingly, reverse the suppression order.

## I.

Defendant, Cirilo Gonzalez–Zamora, was arrested for an open container violation in Palm Beach, Florida on April 6, 2009, by Officer Luciano Kovalski of the Palm Beach County Sheriff's Office. Upon arrest, Officer Kovalski asked defendant for his name, address, and date of birth. Defendant gave the name Cirilo Hernandez–Zamora, and the officer found an identification card in defendant's wallet listing the same. With this information, Officer Kovalski attempted to verify defendant's identification through radio contact with his station office. A warrant check, which was performed by authorities at the station and confirmed by Officer Kovalski on his computer, revealed an outstanding arrest warrant for murder in Denver, Colorado. The Colorado warrant bore the partially matching name of Cirilo *Gonzalez*–Zamora and the same date of birth given by defen-

dant. The officer took defendant into custody and transported him to the stationhouse to determine whether the Colorado warrant related to defendant.

At the police station, Officer Kovalski placed defendant in an interview room while he attempted to verify the identity of the person listed on the Colorado warrant. Denver Police Department Detective Randal Denison emailed photos of the individual wanted on the outstanding Colorado warrant and Officer Kovalski confirmed defendant's identity as the individual listed in the warrant from the emailed photos. Officer Kovalski then returned to the interview room with his supervisor, Sergeant Oscar Cardenas, to question defendant regarding the discrepancy in names.

Defendant was orally advised of his *Miranda* rights by Sgt. Cardenas, a native Spanish speaker. The sergeant read from a standard card written in Spanish and asked defendant to request further explanation should he not understand any of the rights. Sgt. Cardenas reviewed the rights one by one, providing additional explanation for two points after defendant gave a non-verbal indication—a gesture or facial expression—that he did not understand.[1] After reading defendant his rights and receiving no questions, the sergeant asked defendant to sign the advisement card, explaining that in doing so defendant was indicating that he understood his rights. Defendant signed the card.

The sergeant then asked defendant a series of questions regarding his connection with the Colorado warrant. Sgt. Cardenas asked defendant whether he had ever lived in or visited Denver and whether he was ever involved in an incident or problem there. Defendant stated that he had lived in Denver and that, during that time, there had been an incident in which he was attacked by two individuals. Defendant further stated that during the physical altercation, he hit one of the individuals and caused him to fall and hit his head on the sidewalk. Sgt. Cardenas then asked defendant what happened to the

man but defendant stated he did not know. This concluded the interview.

Defendant was eventually charged with first-degree murder in relation to the incident described above. Defendant filed a motion to suppress the statements he gave during the interview conducted by Sgt. Cardenas at the police station, which the trial court granted. In the suppression order, the court found that the prosecution did not establish by a preponderance of the evidence that defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights.

The trial court asserted that factors relating to the audio recording of the advisement and questioning created significant questions as to whether defendant waived his *Miranda* rights knowingly, intelligently, and voluntarily. The court began by noting that "[t]he advisement and questioning of Defendant was ... audio-recorded. The audio-recording ... is extremely difficult to hear and understand." The court additionally noted that although "Sgt. Cardenas' tone during the audible portions of the audio-recording is professional," "there were no audible responses by Defendant when Sgt. Cardenas asked whether he understood each of his rights." Furthermore, the court expressed concern that, with "no verbal assent or acknowledgment by Defendant in response to any of Sgt. Cardenas' statements or questions, apart from a single 'mm-huh'" and with "no videotape," there was "no way of ascertaining Defendant's response (if any) to these statements and questions, and whether he nodded, stared blankly, or what occurred." In addition, the court noted that "Defendant was not asked whether he wanted to waive his rights" and that "questioning began almost immediately (approximately 8 seconds) after Defendant signed the [waiver] form." In conjunction with these circumstances, the court "consider[ed] the fact that the audio-interview ends abruptly and without explanation," which, according to the court, added "additional uncertainty as to the voluntariness of Defendant's statements." Ultimately, the trial court concluded that,

---

**1.** In his testimony at the hearing, Sgt. Cardenas stated that twice during the advisement defendant made a gesture or facial expression "like he

didn't understand what I was saying," which caused the officer to provide additional explanation.

under the totality of the circumstances, the prosecution had failed to meet its burden to demonstrate that defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights, and therefore it could not place into evidence any statements made by defendant at the police station on April 6, 2009.

The prosecution filed a motion seeking clarification and reconsideration of the ruling. In response, the trial court issued a second order interjecting two new sentences into its original order. The additional language stated that "the People have not established by a preponderance of the evidence that Defendant's statements to Sgt. Cardenas were the product of his own free and rational choice, *i.e.*, not made as a result of any direct or implied promise, however slight, nor by the exertion of any improper influence. *E.g., People v. Taylor*, 41 P.3d 681, 694 (Colo.2002)." The order also added that "the People have not established by a preponderance of the evidence that Defendant's waiver of his *Miranda* rights was made voluntarily, *i.e.*, that the Defendant possessed both an awareness of the nature of the right and the consequences of his decision to waive it. *People v. Mejia–Mendoza*, 965 P.2d 777, 780 (Colo.1998)." Read in conjunction, the two court orders suppressed all statements made by defendant at the police station on April 6, 2009, on the twin grounds that defendant's *Miranda* waiver and statements were both involuntary.

The People then filed this interlocutory appeal.

## II.

The trial court's orders rely interchangeably on two grounds for suppression: (1) the involuntariness of the *Miranda* waiver; and (2) the involuntariness of the statements given after the *Miranda* waiver. We therefore address whether suppression was appropriate under either ground.

## A.

■ Pursuant to the Fifth Amendment of the U.S. Constitution and the rule established in *Miranda v. Arizona*, a person subjected to police interrogation while in custody must receive an advisement of his rights prior to questioning. 384 U.S. 436, 467, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once a person has been properly informed of his *Miranda* rights, he may choose to waive them and make a statement to police. *Id.* at 478, 86 S.Ct. 1602. Such a waiver must be voluntary, knowing, and intelligent. *People v. Humphrey*, 132 P.3d 352, 356 (Colo.2006).

■ The validity of defendant's waiver depends upon two elements: (1) whether the waiver was voluntary, that is, whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made knowingly and intelligently. *Id.* Under the first inquiry, a *Miranda* waiver is considered to be involuntary only if coercive governmental conduct played a significant role in inducing the defendant to relinquish his rights. *See People v. May*, 859 P.2d 879, 882–83 (Colo.1993) (citing *People v. Gennings*, 808 P.2d 839 (Colo.1991)). Under the second inquiry, a waiver is deemed knowing and intelligent if it has been "made with a full awareness, both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 882 (quoting *People v. Hopkins*, 774 P.2d 849, 851 (Colo. 1989)). The defendant need not understand every consequence of his decision to waive, only that he does not have to speak, that he may have counsel present, and that the state could use his statements against him. *People v. Al–Yousif*, 49 P.3d 1165, 1169–70 (Colo. 2002).

In the instant case, after the trial court concluded that defendant's *Miranda* waiver was not made "voluntarily," it also raised concerns regarding whether the waiver was knowing and intelligent. The court pointed to the fact that "there were no audible responses by Defendant when Sgt. Cardenas asked whether he understood each of his rights," and that "there [was] no verbal assent or acknowledgment by Defendant in response to any of Sgt. Cardenas' statements or questions, apart from a single 'mm-huh.'" Additionally, the court expressed a concern that "Defendant was not asked whether he wanted to waive his rights." Finally, the court expressed its concern that, due to the

lack of a videotape, it could not evaluate defendant's facial expressions and gestures during the advisement period. None of these concerns, however, leads to the conclusion that defendant's *Miranda* waiver was not voluntary, knowing, or intelligent.

In determining whether a waiver is voluntary, "the sole concern . . . is the presence or absence of government coercion." *Humphrey*, 132 P.3d at 357. Significantly, in the instant case, although the trial court determined that the waiver was not voluntary, it failed to find that the police used intimidation, threats, or promises to coerce defendant into making a *Miranda* waiver. Furthermore, our review of the record demonstrates that there were none. The record is void of any "intimidation, misconduct, or trickery" on the part of the police that would lead us to question the voluntariness of defendant's waiver. *Id.* at 358. Instead, the interaction between Sgt. Cardenas and defendant during the advisement period was calm and "professional," to use the trial court's term, and there was no evidence that the sergeant attempted to deceive or intimidate defendant into waiving his *Miranda* rights. *Compare Humphrey*, 132 P.3d at 358 (discussing cases in which evidence of impermissible coercion has been found). Therefore, we conclude that, contrary to the trial court's determination, defendant's *Miranda* waiver was voluntary.

Likewise, we find that defendant's waiver was knowing and intelligent. The trial court's orders imply that defendant's *Miranda* waiver was not knowing and intelligent because the audio recording failed to register verbal affirmations after Sgt. Cardenas asked whether defendant understood his rights. However, an affirmative response is not necessary if the record otherwise reflects defendant's awareness and comprehension, as is the case here. Defendant was advised of his *Miranda* rights by Sgt. Cardenas, a native Spanish speaker, who read from a standard card written in Spanish. Before Sgt. Cardenas began reading, he told defendant to request further explanation should he not understand any of his rights. Sgt. Cardenas reviewed the rights one by one and provided additional explanation for two

points after defendant, though not verbally asking a question or stopping the advisement, gave some gesture or facial expression that indicated a lack of understanding. Thus, although the trial court correctly noted that there were few audible responses from defendant, defendant did seek clarification regarding two rights. These requests for clarification indicate that he generally understood his rights, and where he did not, he sought clarification, which the sergeant provided. Although the audio recording does not reflect a verbal affirmation after defendant was asked whether he understood each right, his silence is not a sufficient indication that he "failed to grasp the meaning of the *Miranda* advisements given the overwhelming indications to the contrary." *Humphrey*, 132 P.3d at 358.

Moreover, the fact that defendant was not asked directly whether he wished to waive his rights does not render his waiver invalid. After reading defendant his rights and receiving no questions, the sergeant asked defendant to sign the advisement card, explaining that in doing so defendant was indicating that he understood his rights. The trial court correctly observed that defendant was only asked to sign the waiver form and was not asked directly if he wanted to waive his rights. However, an officer is only obligated to ensure that a suspect is aware of and understands his rights. *Id.* A valid waiver is obtained if a defendant understands his rights and he proceeds to speak with police. *Berghuis v. Thompkins*, —— U.S. ——, 130 S.Ct. 2250, 2264, 176 L.Ed.2d 1098 (2010).

Finally, the trial court noted that because the advisement was not videotaped, it was not possible to evaluate defendant's facial expressions and gestures during the advisement. Certainly, the trial court is correct that such a videotape would have been helpful in evaluating defendant's *Miranda* waiver. However, an adequate assessment of the waiver can be conducted using the audiotape; the lack of a videotape does not, in and of itself, suggest that the waiver was ineffective. In sum, we conclude that defendant's *Miranda* waiver was voluntary, knowing, and intelligent.

### B.

Both the United States and Colorado Constitutions prohibit the admission of involuntary statements into evidence. *See Brown v. Illinois,* 422 U.S. 590, 600–01, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Wood,* 135 P.3d 744, 749 (Colo.2006); *People v. Medina,* 25 P.3d 1216, 1221 (Colo.2001). "These protections apply irrespective of whether a defendant is in custody or whether the contested remarks are inculpatory or exculpatory." *Wood,* 135 P.3d at 748. If a statement is the product of rational intellect and a free will unaffected by improper influence, coercion, threats, or promises, it is voluntary. *See People v. McIntyre,* 789 P.2d 1108, 1112 (Colo.1990).

The ultimate test of involuntariness is whether a defendant's will has been overborne by governmental coercion. *See Humphrey,* 132 P.3d at 361; *People v. Valdez,* 969 P.2d 208, 211 (Colo.1998). A statement is not voluntary if it is extracted by threats of violence, obtained by direct or implied promises, or by the exertion of any improper influence. *Gennings,* 808 P.2d at 844. When a defendant seeks to suppress a statement as involuntary, the prosecution must prove by a preponderance of the evidence that the statement resulted from a free and unconstrained choice by the maker. *McIntyre,* 789 P.2d at 1110. Before a statement may be suppressed for involuntariness, a court must find that coercive conduct played a significant role in inducing the statement. *Medina,* 25 P.3d at 1222.

Here, although the trial court determined that defendant's statements were involuntary, it made no finding that the government's actions were coercive. Instead, as noted above, the court pointed to various factors upon which it relied for its conclusion that the statements should be suppressed for involuntariness. For example, the court pointed to the lack of a videotape of the interrogation, the quick initiation of questioning after defendant signed the form, and the "abrupt" ending to the audiotape at the conclusion of the interview. None of these factors, however, suggests that defendant was coerced into making the statements.

Our review of the audiotape leads us to conclude that no threats or promises were made to defendant. The interview proceeded in a calm, orderly, and professional manner. Defendant did not appear to be confused or upset. *Compare Humphrey,* 132 P.3d at 362 (finding statements to be involuntary where defendant "broke down sobbing and was largely unable to compose herself or respond to questions"). Unlike the trial court, we attach little significance to the fact that the questioning occurred soon after completion of the advisement and *Miranda* waiver, nor do we find it particularly significant that the interview ended "abruptly," as the interview appears to have concluded at that point. And while a videotape would have been helpful in evaluating the voluntariness of defendant's statements, an adequate assessment of the statements can be made from the audiotape. We therefore find no basis to conclude that "coercive government conduct play[ed] a significant role in inducing ... statements" from defendant. *Humphrey,* 132 P.3d at 360. Accordingly, we find that the trial court erred in suppressing defendant's statements based on the ground that they were involuntary.

### III.

For the reasons stated above, we reverse the trial court's suppression order.