18CA0734 Peo v Eddins 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA0734 Jefferson County District Court No. 16CR7364 Honorable Christie A. Bachmeyer, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Scott Alexander Eddins, Defendant-Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE NAVARRO Grove and Pawar, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Philip J. Weiser, Attorney General, Jennifer L. Carty, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Victor T. Owens, Alternate Defense Counsel, Parker, Colorado, for Defendant-
Appellant 
1 ¶ 1 Defendant, Scott Alexander Eddins, appeals the judgment of conviction entered upon jury verdicts finding him guilty of burglary and felony menacing. We affirm. I. Background ¶ 2 In October 2015, the victims were awoken in the night by three armed intruders, some of whom wore masks. The victims fought with the intruders; during the fight, one had his mask pulled off, dropped some items, and fired a shot. As the intruders fled, one aimed a gun at the victims who were giving chase. ¶ 3 The Lakewood police collected the items dropped by the intruders. Based, in part, on DNA evidence collected from those items, the police identified Eddins as one of the intruders. ¶ 4 Eddins was charged with two counts of first degree burglary and four counts of felony menacing. See §§ 18-4-202(1), 18-3-
206(1)(a)-(b), C.R.S. 2021. A jury found him guilty as charged. The trial court merged the burglary convictions. II. Motion to Suppress ¶ 5 Eddins contends that the trial court erred by denying his motion to suppress his statements to police. He argues that he was in custody for purposes of Miranda v. Arizona, 384 U.S. 436 (1966), 
2 when he made the statements but he did not receive Miranda warnings. We discern no error. A. Additional Facts ¶ 6 We draw the following facts from the undisputed evidence presented at the suppression hearing, the redacted version of the police detective’s recorded interview with Eddins that was admitted at trial, and the trial court’s order. The unredacted recording of the interview was played at the hearing and is the basis of some of the court’s findings, but it is not in the appellate record. We presume any missing portions of the record support the court’s order. People v. Montgomery, 2014 COA 166, ¶ 22. 1. The Police Interview ¶ 7 Detective Karen Turnbull investigated the home invasion. After identifying Eddins as a potential suspect, the detective interviewed him at the Denver County Jail, where he was being held on an unrelated case. ¶ 8 The detective met Eddins in the jail’s locked interview area. The interview room had one entrance and a table with two chairs, and it was large enough for only two people to sit at the table. 
3 ¶ 9 Eddins was called to the interview room, but he was not escorted by jail staff or handcuffed. He sat across from the detective, who was not armed and did not block the door. The door was left open at the start of the interview but was closed shortly thereafter due to noise outside the room. ¶ 10 After introducing herself, the detective informed Eddins that she wanted to discuss the October 2015 incident. The detective asked, “Do you know anything about that case?” Eddins answered, I’d be willing to tell you a little bit about that because I do know a little bit about it — but um, I was under duress — uh, somebody had threatened my family — and then I seen that person, you know, shooting people. And uh, I’d be willing to share that information, and uh — but I’d like to have some amnesty involved in that case. The detective told him that she could not make any promises regarding amnesty. ¶ 11 Then the detective said, “Because you’re not free to leave, I’ve got to advise you of your rights; not because you’re locked up on this thing, but because you’re locked up on something else.” (The detective did not specify whether she was referring to Eddins’s 
4 freedom to leave the jail or the interview room.) Before the detective could give the Miranda advisements, however, Eddins interjected, I’ve already talked to the detect — or to the officer, and I told them about these people. Little bit about what’s going on. And I told them I wanted to speak to, you know, a detective about some things that I’d seen — someone shot and some things go down that was not cool at all — and that’s got me scared for my family. ¶ 12 The detective gave him the Miranda warnings. She also informed Eddins that he did not have to answer any questions and that, if he decided to answer some questions, he did not have to answer all of them. The detective asked Eddins if he would be willing to talk to her about the case. He said he would like to have an attorney, and the detective told him that she would arrange for him to have an attorney present. Eddins said he understood but went on to say, I’m not admitting any — any part of what went down. And let me please tell you, I’m not — I’m not trying to be hard or difficult with you because I’m willing to share information. I just want to make sure that, um, I’m not, uh, thrown in to the — to the wolves because I was under duress for my family and everything was threatened . . . . 
5 The detective interrupted Eddins, told him that they could not talk any further, and ended the interview. 2. The Court’s Ruling ¶ 13 Defense counsel argued that Eddins’s statements in the interview should be suppressed because he was in custody and the detective failed to give him Miranda warnings before the statements. ¶ 14 In a written order, the trial court denied Eddins’s suppression motion on the ground that he was not in custody for Miranda purposes during the interview. Given this conclusion, the court did not address the prosecution’s argument that Eddins’s statements after he received Miranda warnings were spontaneous, rather than the result of interrogation. B. Miranda and Related Principles ¶ 15 Whether a person is in custody for Miranda purposes is a mixed question of law and fact. People v. Begay, 2014 CO 41, ¶ 9. We defer to a trial court’s findings of fact so long as the record supports them. People v. Minjarez, 81 P.3d 348, 353 (Colo. 2003). We review de novo the legal determination of whether a person is in custody. Effland v. People, 240 P.3d 868, 873 (Colo. 2010). We 
6 may consider undisputed facts in the record, in addition to the trial court’s factual findings. People v. Pleshakov, 2013 CO 18, ¶ 16. ¶ 16 A person subjected to custodial interrogation by law enforcement must first receive an advisement of their Fifth Amendment rights. Miranda, 384 U.S. at 478-79; see also People v. Gonzalez-Zamora, 251 P.3d 1070, 1074 (Colo. 2011). A suspect may waive their rights and make a statement to police but must do so voluntarily, knowingly, and intelligently before the statement may be used against them in a criminal proceeding. See Gonzalez-
Zamora, 251 P.3d at 1074. ¶ 17 Miranda protections apply only when a suspect has been subjected to both custody and interrogation. Effland, 240 P.3d at 873. Interrogation refers to express questioning, as well as any words or actions on the part of the police that they should know are reasonably likely to elicit an incriminating response. See Rhode Island v. Innis, 446 U.S. 291, 292 (1980). ¶ 18 To determine if a person was in custody, we normally ask whether a reasonable person in the same position would have believed their freedom of action had been curtailed to a degree associated with a formal arrest. People v. Matheny, 46 P.3d 453, 
7 464 (Colo. 2002). This is an objective test based on all the circumstances. Minjarez, 81 P.3d at 353. ¶ 19 The traditional test for custody, however, does not apply to a prison or jail setting because it would lead to the conclusion that all prison questioning is custodial given that a reasonable person would always believe they could not leave the prison freely. People v. Parsons, 15 P.3d 799, 801 (Colo. App. 2000); see People v. Denison, 918 P.2d 1114, 1116 (Colo. 1996). So a person is not necessarily in custody for Miranda purposes if they are questioned in jail or prison. People v. J.D., 989 P.2d 762, 768 (Colo. 1999); see also Howes v. Fields, 565 U.S. 499, 511-12 (2012). ¶ 20 To assess whether an inmate is in custody for Miranda purposes, a court must consider whether there has been “a change in the surroundings of the prisoner that results in an added imposition on his freedom of movement.” Denison, 918 P.2d at 1116. Relevant factors include (1) the language used in summoning the inmate; (2) the physical surroundings of the interrogation; (3) the extent to which the inmate is confronted with evidence of his guilt;, and (4) any additional pressure exerted to detain him. Id. Because these factors are not exhaustive, a court may also consider 
8 [t]he time, place, and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer’s tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer’s response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant’s verbal or nonverbal response to such directions. J.D., 989 P.2d at 768 (citation omitted). C. Analysis ¶ 21 We conclude that the trial court did not err by denying Eddins’s motion to suppress. To some extent, we reach this conclusion on different grounds from those articulated by the trial court. See People in Interest of K.D.W., 2020 COA 110, ¶ 32. ¶ 22 First, as for Eddins’s statements made before the detective said he was not free to leave, we conclude that he was not in custody. According to Eddins’s comments in the interview, he expressed interest in speaking to a detective before the interview. And he was not escorted to the interview room. These facts suggest that the jail staff did not exert additional pressure on him to speak with Detective Turnbull. During the interview, Eddins was not 
9 handcuffed, the detective’s tone was conversational, she was not armed, she did not block the exit in the interview room, no officers were just outside the room, and the door to the room was initially left open but was later closed due to outside noise. ¶ 23 We conclude that these circumstances did not amount to an added imposition on Eddins’s freedom of movement. See, e.g., Denison, 918 P.2d at 1116-17 (no custody where tone was not accusatory, defendant was not handcuffed, and door to interview area was open); Parsons, 15 P.3d at 802-03 (no custody where interview was conducted in conference room, the investigators’ tone was conversational, and they were not armed). Further, Eddins was not confronted with evidence of his guilt. Rather, he was asked an open-ended question: “Do you know anything about [the home invasion]?” See Denison, 918 P.2d at 1117 (open-ended questions, as opposed to evidence of guilt, do not support a custody determination); Parsons, 15 P.3d at 802-03 (defendant was not confronted with evidence of his guilt). ¶ 24 Second, we assume without deciding that, after the detective said Eddins was not free to leave, a reasonable inmate in his position would have believed himself to be in custody. The 
10 statements he made immediately after the detective’s comment, however, were not the product of interrogation. Rather, after the detective informed Eddins that he was not free to leave and that she was going to advise him of his rights — but before she could read him his rights — he spontaneously said he had previously requested to speak to an officer regarding what he had seen, that he had seen some things “go down,” and that he feared for his family. A court need not suppress custodial statements that were not the result of police questioning. See People v. Madrid, 179 P.3d 1010, 1015 (Colo. 2008) (holding that the defendant’s custodial statements were admissible where the detective had not asked any questions likely to elicit an incriminating response). ¶ 25 After the detective gave Eddins the Miranda advisement and asked if he was willing to talk with her, he requested a lawyer. The detective said one would be provided so Eddins could decide what he wanted to do in this case. He then volunteered a few more statements. We conclude that all his statements made after the Miranda warning were admissible because they were not the product of interrogation and indicated a waiver of his rights as to those statements. See People v. Leyba, 2019 COA 144, ¶¶ 16, 26-
11 30, aff’d, 2021 CO 54, ¶¶ 18-19, 23-25; People v. Banuelos, 674 P.2d 964, 966 (Colo. App. 1983). ¶ 26 In sum, the record supports the trial court’s denial of the motion to suppress Eddins’s statements to Detective Turnbull. III. Alternate Suspect Evidence ¶ 27 Eddins next contends that the trial court erred by excluding evidence that an alternate suspect — David Mascarenas — committed the charged crimes instead of Eddins. We conclude that the court acted within its discretion. A. Additional Facts ¶ 28 At trial, the prosecution presented evidence that the intruders in the home invasion were Eddins, David Martinez, and Sharon Bateman. Defense counsel initially sought to show that the police investigation was inadequate and should have focused more on Martinez and his alleged associate, Mascarenas. ¶ 29 Later, in response to defense counsel’s questions, Detective Turnbull testified that she was aware that Martinez was dangerous. Defense counsel then attempted to ask about the facts of one of two earlier robberies that Martinez and Mascarenas had allegedly committed together. The prosecutor objected, and a somewhat 
12 confusing colloquy ensued. The trial court attempted to discern whether, despite the defense’s earlier arguments about why this evidence was relevant, defense counsel now sought to elicit the facts of the other robberies to show that Mascarenas was an alternate suspect in the crimes charged here. Defense counsel ultimately argued that the evidence she sought to elicit would show that Mascarenas was a possible alternate suspect in this case. ¶ 30 After hearing arguments about the proffered evidence, the court explained that “under [CRE] 701, [the detective] is not even a perceiving witness. Any information she had would be hearsay.” Following further discussion, the court ruled that the alternate suspect evidence was inadmissible under People v. Elmarr, 2015 CO 53. The court also reiterated that the detective’s testimony about the alternate suspect evidence (i.e., the details of the other robberies) would be hearsay. But the court allowed defense counsel to ask the detective “whether or not Mascarenas was known to associate with Mr. Martinez in these criminal offenses.” ¶ 31 When the cross-examination resumed, defense counsel asked the detective whether Mascarenas’s name had come up in her investigation. She said she did not recall. Counsel followed up 
13 with, “In your investigation of David Martinez, did you become aware that David Martinez and David Mascarenas committed serious crimes together?” The detective answered, “I heard that name David Mascarenas afterwards, after I finished the investigation, just through the court proceedings. I wasn’t aware it [sic] before then.” ¶ 32 Defense counsel asked whether Martinez was involved in another case (the Littleton case), and the detective said she did not know anything about the Littleton case. Then, in response to counsel’s question whether “the only thing you know about the Littleton case is that David Martinez and David Mascarenas did this crime together,” the defective testified, “I don’t even know that.” B. Relevant Principles ¶ 33 We review a trial court’s evidentiary rulings for an abuse of discretion. Tuscany Custom Homes, LLC v. Westover, 2020 COA 178, ¶ 15. A court abuses its discretion if, among other things, its ruling is manifestly arbitrary, unreasonable, or unfair. Id. ¶ 34 To be admissible, alternate suspect evidence must be relevant under CRE 401 and not excludable under CRE 403. Elmarr, ¶¶ 31-
32. To be relevant, alternate suspect evidence must establish a 
14 non-speculative connection or nexus between the alternate suspect and the crime charged. Id. at ¶ 23. Where the evidence concerns the alternate suspect’s other acts, a court must decide whether all the similar acts and circumstances, taken together, support a finding that the same person probably was involved in both the other act and the charged crime. Id. Where alternate suspect evidence concerns out-of-court statements, the evidence must also satisfy the rules governing hearsay. Id. at ¶¶ 24, 41. ¶ 35 Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. CRE 801(c). Hearsay is inadmissible except as provided by statute or rule. CRE 802. C. Analysis ¶ 36 We need not decide whether the excluded evidence was relevant alternate suspect evidence because we conclude that the trial court reasonably excluded it as hearsay.1 ¶ 37 Detective Turnbull testified that she learned of Mascarenas after her investigation was completed, through unrelated court 1 Given our disposition, we do not reach the People’s claims that the alternate suspect issue was waived and the alternate suspect evidence was irrelevant. 
15 proceedings. She said she knew very little, if anything, about Mascarenas’s and Martinez’s participation in other crimes. So, to the extent she would have testified about the details of other crimes committed by Mascarenas and Martinez, her testimony would have been hearsay (i.e., based on out-of-court statements she heard or read). See People v. Pack, 797 P.2d 774, 777 (Colo. App. 1990) (affirming the trial court’s exclusion of alternate suspect evidence offered via a police officer’s testimony where “the officer did not possess first-hand knowledge of the [other] robbery and his testimony was therefore hearsay”); CRE 701. ¶ 38 Nonetheless, Eddins contends that “the alternate suspect evidence showing Martinez and Mascarenas committed similar robberies to the home invasion in this case was not produced to prove the matter asserted.” The relevance of alternate suspect evidence concerning the suspect’s other acts, however, depends entirely on the truth of the matter asserted in the evidence — that the alternate suspect actually committed the other acts. See Elmarr, ¶ 23. In other words, the detective’s testimony about the other crimes would have been relevant alternate suspect evidence only if the out-of-court assertions inherent in the testimony (that 
16 Mascarenas and Martinez committed the other crimes) were true. Hence, the detective’s testimony would have been hearsay. ¶ 39 Eddins also says the detective’s testimony about Martinez’s and Mascarenas’s other robberies would not have been hearsay because it was offered (1) to show that the detective failed to conduct an adequate investigation given that the other robberies had “distinctive similarities” to the crimes charged here; and (2) to connect Martinez to the other robberies. But those purposes of the evidence also depend on the truth of the matter asserted in out-of-
court statements — that the other robberies occurred and were committed by Martinez and Mascarenas. Thus, the trial court reasonably ruled that the proffered evidence was hearsay. See, e.g., People v. Zubiate, 2013 COA 69, ¶ 16 (affirming the trial court’s ruling excluding evidence as hearsay where “the statement was only relevant if it was offered for the truth of the matter asserted”), aff’d, 2017 CO 17.2 2 As an additional reason why the proffered alternate suspect evidence was relevant, Eddins says it demonstrated the violence often inflicted by Martinez and thus would have helped the jury understand why Eddins “was experiencing duress and afraid of the other people involved in the home invasion.” We discern three problems with this theory of relevance: (1) Eddins did not assert a 
17 ¶ 40 Finally, we reject Eddins’s contention that the alternate suspect evidence was admissible hearsay under the business record exception. Because he did not raise this claim below, we review it for plain error. See Hagos v. People, 2012 CO 63, ¶ 14. ¶ 41 Under the business record exception, a record kept in the course of a regularly conducted business activity is admissible under certain circumstances. See CRE 803(6). Eddins, however, did not seek to admit any such record. Rather, Eddins sought to admit testimony from a witness who, Eddins argues, might have learned about the other incidents from a police report. But he cites no authority holding that a witness may testify about the contents of an alleged business record that has not been admitted into evidence. In the cases Eddins cites, the document itself was admitted. See People v. Warrick, 284 P.3d 139, 143-44 (Colo. App. 2011) (police booking sheets); People v. Carrasco, 85 P.3d 580, 583-
84 (Colo. App. 2003) (charging document); Lannon v. Taco Bell, Inc., duress defense; (2) this theory does not relate to an alternate suspect because Martinez was an actual suspect, along with Eddins, in the crimes charged here; and (3) this theory depends on the truth of the matter asserted in out-of-court statements (that Martinez committed the other crimes). 
18 708 P.2d 1370, 1374 (Colo. App. 1985) (police offense reports), aff’d, 744 P.2d 43 (Colo. 1987). Consequently, we do not discern error, much less plain error, in the court’s failure to admit the proffered testimony under CRE 803(6). ¶ 42 Because the proffered testimony about an alternate suspect would have been inadmissible hearsay, we conclude that the trial court did not abuse its discretion by excluding it. For this reason, the court’s ruling did not violate Eddins’s confrontation rights. See People v. Dominguez-Castor, 2020 COA 1, ¶¶ 68-69. IV. Conclusion ¶ 43 The judgment is affirmed. JUDGE GROVE and JUDGE PAWAR concur.